## IN THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY TRIAL DIVISION

| | | |
|---|---|---|
| **JAMES COPPEDGE** | ) | **Pro Per** |
| **Plaintiff** | ) | |
| | ) | |
| vs. | ) | **10 - 394** |
| | ) | |
| | ) | May Term 2009 |
| | ) | Number 02170 |
| | ) | |
| **RICHARD BEAUMONT** | ) | |
| REOCOMPLETE REAL ESTATE, INC. | ) | |
| 140 E. RICHARDARDSON AVE. | ) | **EMERGENCY STAY OF EXECUTION** |
| LANGHORN, PA 19047 | ) | **AND WRIT OF PROHIBITION AGAINST** |
| | ) | **MORTGAGE FORECLOSURE POSSESSION** |
| JP MORGAN CHASE BANK, N.A. | ) | **UPON PROOF OF CLAIM OF LEGAL** |
| [CHASE HOME FINANCE LLC/EMC | ) | **STANDING IN COMMERCE** |
| MORTGAGE CORPORATION] | ) | **PURSUANT TO: RULE 12(b)(c)** |
| [("CHASE")]/("EMC")], | ) | **37, 37(c), 37(c)(3), Title 42** |
| 10790 RANCHO BERNARDO ROAD | ) | **Section 1983, Title 18 Part 1, Chapter 42** |
| MAIL STATION WII-4033 | ) | **Section 894, Chapter 31, Section 655 & 656** |
| SAN DIEGO, CALIFORNIA 92127 | ) | Title 42, Section 1983, Rule 60(b)(c), and |
| | ) | R.I.C.O. Statue Section 1962(c)(d) |
| MCCABE, WEISBERG AND CONWAY | ) | |
| BY:  TERRENCE J. MCCABE, ESQ | ) | |
| **MARC WEISBER, ESQ.** | ) | |
| **EDWARD D. CONWAY, ESQ.** | ) | |
| **MARGARET GAIRO, ESQ.** | ) | |
| 123 SOUTH BROAD STREET | ) | |
| SUITE 2080 | ) | |
| PHILADELPHIA, PENNSYLVANIA | ) | |
| 19109 | ) | |
| | ) | |
| DEFENDANT | ) | |

**Property: 3737 N. 18TH STREET, PHILADELPHIA, PA  19140**
**Loan #:   0024742546**

## REMOVAL NOTICE
## OF CASE # 02170 FROM LOWER COURT TO FEDERAL COURT
## FOR STAY OF EMERGENCY EXECUTION,
## WRIT OF PROHIBITION, AND COMPLAINT IN
## MORTGAGE FORECLOSURE

**ON AND FOR THE RECORD AND LET THE RECORD SHOW** that a

Petition for Relief of Emergency Stay of Execution, Writ of Prohibition and Complaint to

Federal Court for a Stay of Emergency Execution shall be filed in Federal Court not later

than May 12, 2010 by Plaintiff JAMES COPPEDGE. This is a DEMAND for the
DEFENDANTS to PROVIDE **PROOF OF CLAIM** OF LEGAL STANDING in the
NOTICE OF FORECLOSURE & TORTOUS INTERFERENCE IN THE MATTER OF
THREATS TO ANY OCCUPPANCY OF THE PROPERTY TO PREPARE TO
VACATE WITHOUT LAWFUL DOCUMENTATION which was tapped to the front
door and locks changed on the property May 5, 2010. As a consequence of the
MORTGAGE COMPANY and ATTORNEYS FAILING TO REBUT ALL
AFFIDAVITS IN THE LOWER COURT YOU HAVE AGREED TO DEFAULTS BY
SILENCE. Furthermore, the Lien is irrevocable and shall be filed in any State or County
to perfect the Lien as stipulated.

Sincerely,

5-12-10

:James: Coppedge, UCC1-308
Secured Party Creditor,
Authorized Representative

WITNESS my hand and official seal.

NOTARY PUBLIC

DATE May 12, 2010

My commission expires: February 7 , 20 11

Com # 2006431441 5

# EXHIBIT A

**AFFIDAVIT OF NICE OFFER AND DEMANDS**

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

|  |  |
|---|---|
| **JAMES COPPEDGE** )<br>       **Plaintiff** )<br>)<br>)<br>vs. )<br>)<br>)<br>)<br>)<br>)<br>JP MORGAN CHASE BANK, N.A. )<br>10790 RANCHO BERNARDO ROAD )<br>MAIL STATION WII-4033 )<br>SAN DIEGO, CALIFORNIA 92127 )<br>)<br>MCCABE, WEISBERG AND CONWAY )<br>BY: TERRENCE J. MCCABE, ESQ )<br>    MARC WEISBER, ESQ. )<br>    EDWARD D. CONWAY, ESQ. )<br>    MARGARET GAIRO, ESQ. )<br>123 SOUTH BROAD STREET )<br>SUITE 2080 )<br>PHILADELPHIA, PENNSYLVANIA )<br>        19109 )<br>)<br>)<br>    DEFENDANT )| **Pro Per**<br><br>May Term 2009<br>Number 02170 |

**Property: 3737 N. 18TH STREET, PHILADELPHIA, PA 19140**
**Loan #: 0024742546**

## <u>AFFIDAVIT OF</u>
## <u>NICE OFFER AND DEMANDS</u>

*NOTICE TO PRINCIPALS IS NOTICE TO AGENTS*

*AND NOTICE TO AGENTS IS NOTICE TO PRINCIPALS.*

*THIS IS LAWFUL NOTICE TO CLAIMANT THAT UNTIL CLAIMANT HAS*

*VALIDATED AS STIPULATED AND PRODUCED AS STIPULATED, THE*

*INFORMATION AND DOCUMENTATION DEMANDED HEREIN*

***CLAIMANT MUST CEASE ANY AND ALL FORECLOSURE***

***AND/OR COLLECTION ACTIVITIES IMMEDIATELY.***

*l*

**COMES NOW,** Affiant, to present to Claimant this "nice offer and demands" and lawful legal notice(s) pursuant to (but not limited to) the Constitution for the United States, the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq, and applicable law. Pursuant to the federal Constitution, specifically, the Bill of Rights, in particular, the First, Fourth, Fifth, Sixth, Seventh, Ninth and Tenth Amendments, and requires your written response or rebuttal (point by point) to Affiant, specific to the subject matter within 30 days. Failure to respond, as stipulated, and rebut that with which you disagree, in writing, with particularity, to Affiant, within 30 days of the date this Nice Offer And Demands was received by Claimant, and support Claimant's disagreement with fact, evidence and Constitutionally based law, constitutes Claimant's full agreement with Affiant's allegations and claims. *"Your silence is your acquiescence". See: Connally v. General Construction Co., 269 U.S. 385,391. Notification of legal responsibility is "the first essential of due process of law". See also: U.S. V. Tweel, 550 F.2d.297. "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading".*

1. **CONTENTS OF THIS DOCUMENT**
   1. Lawful legal demands, notices, claims, allegations, and statements;
   2. Sworn denial;
   3. Nice offer to fully pay purported debt upon validation within 5 days as stipulated;
   4. Demands to produce the original promissory note and all related documents;
   5. Affiant's questions for claimant to respond within 30 days;
   6. Affiant's statements for claimant to agree with or to dispute within 30 days;
   7. Affiant's demand for claimant to respond (or to rebut) point by point and to comply with all demands in this document within 30 days.
2. **SWORN DENIAL:** Pursuant to the Constitution for the United States, the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq and all other applicable law, I, Affiant, hereby swear and attest that that the following :
   1. I deny that the above referenced purported debt is my debt;
   2. If the above referenced purported debt is my debt, I deny that it is a valid lawful debt;

   3. If the above referenced purported debt is a valid debt I deny the amount sued for, or stated, or attempted to be collected is the correct amount.

3. **NICE OFFER:** Pursuant to Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, and all other applicable law, Affiant hereby offers Claimant to fully pay/discharge purported debt on condition that Claimant within 5 days of receipt of this offer:

   1. Verifies purported debt;
   2. Verifies that purported debt does not constitute fraud;
   3. Produces the original Promissory Note signed by Affiant and all related documents.

4. **DEMANDS:** Pursuant to the Constitution for the United States, the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq and all other applicable law, I demand for Claimant to within 30 days of receipt of this demands :

   1. Verify purported debt;
   2. Verify that purported debt does not constitute fraud;
   3. Produces all documents related to the alleged debt including but not limited to "T-Accounting" (Complete Records) and the original Promissory Note signed by Affiant.

   4. **AFFIANT'S DEFINED DEMANDS AND REQUESTS TO CLAIMANT FOR PRODUCTION OF ORIGINAL PROMISSORY NOTE RELATED DOCUMENTS**

   Affiant hereby requests that Claimant and its attorneys, in full accordance with:

      A. the applicable provisions of the State's Rules of Civil Procedure, the Constitution for the United States,
      B. the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq,
      C. and all applicable law,

      produce the following documents for inspection and copying by delivering such original documents to Affiant within 30 days of Claimant receiving this request.

         a. **AFFIANT'S INSTRUCTIONS TO CLAIMANT**

*3*

1. If you have possession, custody, or control of the originals of the documents requested, then the originals shall be produced. If you do not have possession, custody, or control of the originals of the documents requested, then each original shall be produced.

2. This request shall be continuing to the full extent permitted under the applicable provisions of this States Rules of Civil Procedure.

3. You are thus required to supplement your responses to this request as provided by the State's Rules of Civil Procedure.

4. If you assert privilege as a ground for refusing to produce documents in response to any request, produce documents in response to that part of each such request that, in your view, does not seek allegedly privileged information or communications. For each request, or portion thereof, for which you claim a privilege, describe the factual basis for the claim of privilege in sufficient detail to permit adjudication of the validity of that claim, including without limitation, the following:

    a. a brief description of the type of communication or information (e.g., document or conversation);

    b. the date of the information or communication;

    c. the name of the transmitter of the information or communication;

    d. the name of the person to whom the information or communication was transmitted;

    e. the name of each person to whom the information or communication has been provided, whether by Claimant or any other person;

    f. a brief description of the subject matter of the information or communication;

    g. the nature of the privilege claimed.

h. All documents produced pursuant to this request shall be produced in separate groups of documents responsive to each separate request and, to the extent possible, in the form and order in which they were kept by you before being produced. All definitions set forth below shall be carefully regarded.

b. **DEFINITIONS**

1. As used herein, the word **"identify,"** when used in reference to:

    a. an <u>individual,</u> shall mean to state his or her full name, present or last known (designating which) residence address, and present or last known (designating which) business address, job title, and employment address;

    b. a corporation, partnership, firm, proprietorship, association, governmental unit, or other organization or entity, shall mean to state its full name and present or last known (designating which) address and telephone number;

    c. a <u>document,</u> shall mean to state the title (if any), the date, author, sender, recipient, the identity of person signing it, the type of document (i.e., a letter, memorandum, book, telegram, chart, etc.) or some better means of identifying it, a summary of its contents, and its present location or custodian;

2. As used herein, the words **"document"** or documents" are to be construed broadly and shall mean the original of the same (and not copies or drafts thereof) and if the original is not available, the only the original may be produced. These terms shall include all information recorded in any written, graphic or other tangible form and shall include, without limiting the generality of the foregoing, all reports;

memoranda; books or notebooks; written or recorded
statements, interviews, affidavits and depositions; all letters
or correspondence; telegrams, cables and telex messages;
contracts, leases, insurance policies or other agreements;
warnings and caution/hazard notices or labels; mechanical
and electronic recordings and all information so stored, or
transcripts of such recordings; calendars, appointment
books, schedules, agendas and diary entries; notes or
memoranda of conversations (telephonic or otherwise),
meetings or conferences; legal pleadings and transcripts of
legal proceedings; maps, models, charts, diagrams, graphs
and other demonstrative materials; financial statements,
annual reports, balance sheets and other accounting
records; quotations or offers; bulletins, newsletters,
pamphlets, brochures and all other similar publications;
summaries or compilations of data; deeds, titles, or other
instruments of ownership; blueprints and specifications;
manuals, guidelines, regulations, procedures, policies and
instructional materials of any type; photographs or pictures,
film, microfilm and microfiche; videotapes; articles;
announcements and notices of any type; surveys, studies,
evaluations, tests and all research and development (R&D)
materials; newspaper clippings and press releases; time
cards, employee schedules or rosters, and other payroll
records; canceled checks, invoices, bills and receipts; and
writings of any kind and all other tangible things upon
which any handwriting, typing, printing, drawings,
representations, graphic matter, magnetic or electrical
impulses, or other forms of communication are recorded or
produced, including audio and video recordings, computer
stored information (whether or not in printout form),
computer-readable media or other electronically maintained
or transmitted information, and all other rough drafts,

revised drafts (including all handwritten notes or other marks on the same) and copies of documents as herein before defined by whatever means made.

3. As used herein, the terms **"Claimant"** "you," "your," or any synonym thereof are intended to and shall embrace and include the Claimant including its present and former legal representatives, subsidiaries, divisions, departments, affiliated companies, successors and assigns, as well as their respective officers, directors, employees, agents, attorneys and any others who are in possession of or may have obtained information or documents for or on behalf of Claimant.

4. As used herein, the terms **"FORMER Claimant(s)"** (*in a situation where the original lender sold/merged with another lender*) are intended to and shall embrace and include the Former Claimants and including its present and former legal representatives, subsidiaries, divisions, departments, affiliated companies, successors and assigns, as well as their respective officers, directors, employees, agents, attorneys and any others who are in possession of or may have obtained information or documents for or on behalf of Claimant from Former Claimant(s).

5. As used herein, the words **"person"** or "persons" shall mean all natural persons and entities, including without limitation: corporations, companies, partnerships, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus or boards.

6. As used herein, term **"date"** means the exact day, month, and year, if ascertainable or, if not the best approximation thereof, including relationship to other events.

7. As used herein, the conjunction **"and"** is defined to include the disjunctive "or" and vice versa. The singular of a noun or pronoun is defined to include the plural and vice versa.

The masculine of a pronoun is defined to include the feminine and vice versa.

8. As used herein, the words **"related to"** or **"relating to"** shall include pertaining to, concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, deriving from, evidencing, compromising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including.

9. As used herein, the phrase **"the State's related mortgage loan"** is intended to have the same meaning as is set forth in 12 U.S.C. § 2602(1) and 24 C.F.R. § 3500.2. In particular, the phrase is intended to encompass, include and embrace those loans made to refinance any existing loan.

10. As used herein, the phrase **"settlement service"** or settlement services" is intended to have the same meaning as set forth in 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2.

11. As used herein, the phrase **"mortgage broker"** is intended to have the same meaning as set forth in 24 C.F.R. § 3500.2.

c. **RELATED DOCUMENTS REQUESTS**

1. **AFFIANT'S REQUEST AND DEMAND NO.1** Every document that records, reflects, or evidences Affiant's alleged mortgage loan transaction with Claimant and Affiant's alleged mortgage loan transaction with Claimant including without limitation all documents which were prepared, generated or reviewed in connection with the application, underwriting, review and credit assessment, approval, funding, closing, and recording of said loans and,

2. **AFFIANT'S REQUEST AND DEMAND NO.2.** Every document that records, reflects, or evidences payment, fees, commissions, or other compensation you made to any

person in connection with Affiant's alleged mortgage loan and in connection with Affiant's alleged mortgage loan (including but not limited to canceled checks that were issued at the loan closings).

3. **AFFIANT'S REQUEST AND DEMAND NO.3.**Every document that records, reflects, or evidences payment that Claimant received from Counter- Affiant and charges and costs incurred on Affiant's accounts (in connection with his mortgage loan with Claimant.

4. **AFFIANT'S REQUEST AND DEMAND NO.4.** Every document that records, reflects, or evidences oral or written communication relating to Affiant's alleged mortgage loan and Affiant's alleged mortgage loan that Claimant made internally and that made with former Claimant and with any other person or entity.

5. **AFFIANT'S REQUEST AND DEMAND NO.5.** Every document that records, reflects, or evidences any consideration (i.e., money, payment, compensation, fee charge or anything of value including a "yield spread") that Claimant paid, gave or otherwise remitted to former Claimant in connection with Counter- Affiant's alleged mortgage loan and in connection with Affiant's alleged mortgage loan.

6. **AFFIANT'S REQUEST AND DEMAND NO.6.** Every document that records, reflects, or evidences your calculation or computation of the amount that Claimant paid, gave or remitted as consideration (i.e., money, payment, compensation, fee, charge or anything of value including a "yield spread") to Former Claimant in connection with the making, closing, or funding of Affiant's alleged mortgage loan and in connection with Affiant's alleged mortgage loan.

9

7. **AFFIANT'S REQUEST AND DEMAND NO.7.** Every document that records, reflects, or evidences your calculation or computation of the amount that Claimant charged Affiant as a "loan discount" fee in connection with the making, closing, or funding of Affiant' s mortgage loan with Claimant.

8. **AFFIANT'S REQUEST AND DEMAND NO.8.** Every document that records, reflects, or evidences Claimant's policy or practice (during the period beginning March 27, 1987 through the present) of giving, paying or remitting "service release premiums," "yield spread premiums", "yield differentials", or "bonus up sell points" or any other fees, compensation or things of value to "mortgage brokers," including Former Claimants in connection with the origination, underwriting, making, funding or closing of a "state related mortgage loan."

9. **AFFIANT'S REQUEST AND DEMAND NO.9.** Every document received from or provided to any "mortgage brokers," including Former Claimants, with whom you conducted business (during the period beginning March 27, 1987 to the present) which records, reflects, or evidences the determination, calculation or computation of any amount which you would pay, give or remit to that "mortgage broker", including but not limited to any "service release premiums", "yield spread premiums", "yield differentials", "bonus up sell points", or "back end points" in connection with your making, funding, or closing any "State's related mortgage loans."

10. **AFFIANT'S REQUEST AND DEMAND NO. 10.** Every document that records, reflects, or evidences any policy, criteria, and underwriting guidelines that Claimant used during the period beginning March 27, 1987 to the present in determining the terms (including but not limited to

*10*

prepaid finance charge, discount points, broker points, and broker up sell points) of mortgage loans that Claimant made during that period.

11. **AFFIANT'S REQUEST AND DEMAND NO. 11.** Every document that records, reflects, or evidences any policy, criteria, and underwriting guidelines that Claimant used in determining the terms (including but not limited to the interest and prepaid finance charge, discount points, origination fees, broker points, and broker up sell points) of Affiant's alleged loan.

12. **AFFIANT'S REQUEST AND DEMAND NO. 12.** Every document that records, reflects, or evidences any policy, criteria, and underwriting guidelines that Claimant used in determining the terms (including but not limited to the interest and prepaid finance charge, discount points, origination fees, broker points, and broker up sell points) of Affiant's alleged loan.

13. **AFFIANT'S REQUEST AND DEMAND NO. 13.** Every document which you at any time since March 27, 1987 have provided to any "mortgage brokers," including former Claimants, that records, reflects, or evidences your attempts, desires or proposals to secure or promote a business relationship with that "mortgage broker" to make, close, or fund "this State's related mortgage loans" involving persons who had engaged, retained or contracted with that "mortgage broker" for the provision of any type of "settlement services," including mortgage brokerage services.

14. **AFFIANT'S REQUEST AND DEMAND NO. 14.** Every document that records, reflects, or evidences any date, amount, and term of any line of credit, loan, or other extension of credit of any kind and any payment in cash, payment in kind, non cash equivalent, gift, and other

remuneration that Claimant or any person or entity affiliated with Claimant (including but not limited to any entity related to Claimant as a subsidiary, affiliate or parent corporation or as a subsidiary or affiliate of Claimant's parent corporation) has extended or given to Former Claimant.

15. **AFFIANT'S REQUEST AND DEMAND NO. 15.** Every document (including, but not limited to, agreements, contracts, underwriting guidelines, rate sheets and pricing sheets) that records, reflects or evidences any agreement or understanding relating to (and any terms and conditions governing) your business relationship with Former Claimant, and the basis upon which you would or did make, close, or fund "this State's related mortgage loans" involving persons who had retained, engaged or contracted with Former Claimants for the provision of "settlement services," including mortgage brokerage services, during the period March 27, 1987 to the present.

16. **AFFIANT'S REQUEST AND DEMAND NO. 16**. Every document that records, reflects, or evidences any fact that pertains to Claimants current or previous lawsuits.

17. **AFFIANT'S REQUEST AND DEMAND NO. 17.** Every document that records, reflects, or evidences any of "this State's related mortgage loans" including documents which were prepared, generated or reviewed in connection with the application, underwriting, review and credit assessment, approval, funding, table-funding, closing, recording, and subsequent sale or transfer of any such loans, and including specifically the following:

   a. the signed (original blue ink signature) original promissory note, original deed to secure debt, original Truth in Lending Disclosure statement, U. S. Department of Housing and Urban Development

Settlement Statement (HUD-1), Good Faith
Estimate; and

b. every document that records, reflects, or evidences
an agreement or understanding that the mortgage
broker would provide mortgage brokerage services
for the borrower; and

c. every document that records, reflects, or evidences
the money, compensation, fee, consideration or
anything of value (including but not limited to a
"yield spread premium", "yield spread", "yield
differential", "service release premium", "bonus up
sell points", and/or "back end points" that Former
Claimant's or other mortgage broker received from
you in connection with such mortgage loans.

18. **AFFIANT'S REQUEST AND DEMAND NO. 18.** All
pleadings, correspondence between opposing counsel,
deposition transcripts and exhibits thereto, trial transcripts,
orders, and all other non-privileged documents relating to
any lawsuit identified in response REQUEST AND
DEMAND REQUEST AND DEMANDS to Claimant.

19. **AFFIANT'S REQUEST AND DEMAND NO. 19.** Every
document which you received from or provided to any the
State's government official or agency relating to your
compliance or alleged or possible noncompliance with the
Real Estate Settlement Procedures Act at any time from
March 27, 1987 through the present.

20. **AFFIANT'S REQUEST AND DEMAND NO. 20.** Every
document which records, evidences, or reflects any
investigation conducted by any the State's government
official or agency to determine whether you had complied
or were complying with the Real Estate Settlement
Procedures Act at any time from March 27, 1987 through
the present.

21. **AFFIANT'S REQUEST AND DEMAND NO. 21.** Every document which you received from or provided to any state government official or agency relating to your compliance or alleged or possible noncompliance with any state laws relating to fees paid by Claimant to a mortgage broker at any time from March 27, 1987 through the present.

22. **AFFIANT'S REQUEST AND DEMAND NO. 22.** Every document which records, evidences, or reflects any investigation conducted by any state government official or agency to determine whether you had complied or were complying with any state laws relating to fees paid by Claimant to a mortgage broker at any time from March 27, 1987 through the present.

23. **AFFIANT'S REQUEST AND DEMAND NO. 23.** Every document that records, reflects, or evidences any report received from or prepared by any expert witness who has been retained or specifically employed by you and who is expected to testify at the trial of this case.

24. **AFFIANT'S REQUEST AND DEMAND NO. 24.** Every written or recorded statement, interview, affidavit, correspondence, report or other document which discusses or in any way relates to the occurrences, events, claims, or subject matter set forth in Affiant's Complaint, and "private" Negotiable Instruments for Settlement and Closure or the facts or issues involved in this lawsuit.

25. **AFFIANT'S REQUEST AND DEMAND NO. 25.** All documents not previously produced which were identified, referenced or described in, or otherwise relate to your answers/responses to Affiant's Demands and requests to Claimant.

26. **AFFIANT'S REQUEST AND DEMAND NO. 26.** Affiant hereby lawfully requests to be included as evidence (and establishing "John Does"):

          a.   a list of all of Claimant's Officers and their addresses,

          b.   the name and address of Claimant's Bonding Company,

          c.   the Bond account number,

          d.   a certified copy of Claimant's Charter from this State,

          e.   Claimants tax ID number.

5. **15 U.S.C. § 1692 (E) STATES THAT** a "false, deceptive, and misleading representation, in connection with the collection of any debt", includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice.

    1. Claimant's notice / claim omit information which should have been disclosed, such as but not limited to vital citations, disclosing the agency's jurisdictional and statutory authority.

    2. Claimant's notice / claim further contains, false deceptive and misleading representations, and allegations intended to intentionally pervert the truth for the purpose of inducing one, in reliance upon such, to part with property belonging to them and to surrender certain substantive legal and statutory rights.

    3. To act upon Claimant's Notice / claim would divest one from his/her property and their prerogative rights, resulting in legal injury.

6. **PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT. 15 U.S.C. §§ 1601, 1692 ET SEQ,** this constitutes timely written notice that Affiant declines to pay the referenced erroneous purported debt which is unsigned and unattested, and which Affiant discharges and cancels in its entirety, without dishonor, until Claimant:

    1. validates purported debt;

    2. validates that purported debt does not constitute fraud;

    3. Produce the documentation and information demanded herein.

7. **PURSUANT TO 15 U.S.C. § 1692 (G) (4) VALIDATION OF DEBTS**, this is lawful demand that, within 30 days, Claimant must provide lawful validation and supporting legal evidence to substantiate Claimant's claims that:

    1. the purported debt does not constitute fraud;
    2. the purported debt does not constitute fraudulent misrepresentation;
    3. the purported debt is lawfully owed by Affiant to Claimant,

8. **PURSUANT TO FAIR DEBT COLLECTION ACT, 15 U.S.C. § 1692 (G) (8)**, as you are merely an "agency", or board, acting on someone else's behalf, Affiant demands that Claimant provide:

    1. the name and all details of the original "principal",
    2. the name and all details of the "holder in due course",
    3. The name and all details for whom you attempting to collect this alleged debt.

9. **UNTIL ALL THE REQUIREMENTS** of the Fair Debt Collection Practices Act and this "Offer and Demands" have been met by Claimant and Claimant's claims are validated in fact, case law, and evidence, Claimant has no legal jurisdiction to continue any collection activity on the purported debt that Claimant alleges Affiant owes Claimant. This is not Affiant's refusal to pay a lawful debt, but Affiant is hereby:
    1. disputing the validity of the alleged debt
    2. DISPUTING THAT PURPORTED DEBT DOES NOT CONSTITUTE FRAUD
    3. Demanding Claimant to produce the original Promissory Note and all related documents and answer /rebut Affiant's allegations, questions, and demands as stipulated by law.

10. **ABSENT VALIDATION OF CLAIMANT'S CLAIMS AND PRODUCTION OF THE DOCUMENTS, CLAIMANTS ANSWERS TO AFFIANTS QUESTIONS, AND CLAIMANT'S REBUTTAL TO AFFIANTS STATEMENTS, POINT BY POINT, AS DEMANDED HEREIN**, Claimant is prohibited by law to:
    1. file any notice of lien and/or levy;
    2. report any derogatory credit information to any Credit Reporting Agency;
    3. Continue with any collections activities regarding this disputed purported debt.

11. **AFFIANT HAS NOW TWICE MADE GOOD FAITH OFFER TO CLAIMANT** to resolve the question of this alleged purported debt pursuant to the Constitution for the United States, the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq, and applicable law by offering to fully pay purported debt within 5 days and hereby demands Claimant to:

   1. produce the original Promissory Note and all related documents;
   2. answer Affiant's questions (below) and signing the enclosed Affidavit (below),
   3. **Rebut Affiant's "statements for claimant to agree or to dispute" (below).**

12. **CLAIMANT MUST OBEY THE LAW:** "railroading is criminal. Denial establishes guilt. This is constructive notice that, absent the validation of Claimant's claims and response within 30 days, Claimant must cease and desist any and all collection activity and is prohibited from contacting Affiant, through the mail, telephone, in person, at Affiant's home, in public, or at Affiant's work.

   1. Claimant is prohibited from contacting Affiant's employer;
   2. Claimant is prohibited from contacting Affiant's bank;
   3. Claimant is prohibited from contacting any other third party regarding Affiant, as each and every attempted contact as forbidden above is in violation of this Act and will constitute harassment and defamation of character and will subject Claimant's company/agency and/or board, and any and all agents in his/her/their individual capacities, who take part in such harassment, and defamation, for a liability for actual damages, as well as statutory damages of **$1,000,000 for each and every violation**.

13. **IN THE EVENT** that Claimant refuses and/or fails to validate purported debt and validate that purported debt does not constitute fraud and refuses to produce the documentation and information Affiant demands herein, Affiant will file with the Courts, the Grand Jury, and the federal trade commission charges against Claimant on the grounds of (but not limited to):

   1. Breach of Contract;
   2. False representation;
   3. Fraud.

14. **IF AFFIANT IS FORCED TO FILE CHARGES AGAINST CLAIMANT IN COURT DUE TO CLAIMANT'S REFUSAL TO RESPOND**, Affiant will demand that Claimant:

   1. Marks the subject erroneous purported debt "Satisfied" and "Paid in Full" on the county Records Books and Refunds each and every monthly payment (principal and interest) which we may have inadvertently made toward said fraudulent purported debt;

   2. Returns Affiant's original blue ink signature affixed upon the original documents that may exist pertaining to the subject erroneous purported debt,

   3. Pays Affiant treble damages and other damages for injuries caused by Claimant.

15. **AFFIANT HAS DEMANDED FOR CLAIMANT TO COMPLY AMICABILY:**

   If Claimant fail or refuses to:

   1. answer, rebut, respond, or acknowledge any portion of this document;

   2. the remaining portions must be answered, rebutted, responded to, and acknowledged;

   3. Affiant's statements and questions are based on fact, case, and law,

   it will constitute Claimants agreement with Affiant in all claims and statements and facts as specified in "Affiant's demand for claimant to respond (or to rebut) point by point and to comply with all demands in this document within 30 days".

**<u>AFFIANT'S DEMAND FOR CLAIMANT TO ANSWER QUESTIONS WITHIN 30 DAYS</u>**

*THIS DEMAND FOR CLASIMANT TO ANSWER QUESTIONS IS PURSUANT TO THE FDCPA, TILA, AND ALLEGED CONTRACT (THE ALLEGED LOAN AGREEMENT)*

**<u>CLAIMANT RESPONDS by writing Claimant's answer
on the line after "*CLAIMANT'S ANSWER:*"</u>**
*Write the answers and return on a separate document together with Affidavit (below)*

1. **AFFIANT'S QUESTION:** Did the bank loan credit to the alleged borrower?
   *CLAIMANT'S ANSWER:* _____

2. **AFFIANT'S QUESTION:** Did the borrower sign any agreement with the bank, which prevents the borrower from repaying the bank in credit?
   *CLAIMANT'S ANSWER:* _____

3. **AFFIANT'S QUESTION:** Is it true that your bank creates check book money when the bank grants loans, simply by adding deposit dollars to accounts on the bank's books, in exchange, for the borrower's mortgage note?
   *CLAIMANT'S ANSWER:* _____

4. **AFFIANT'S QUESTION:** Has your bank, at any time, used the borrower's mortgage note, "promise to pay", as a deposit on the bank's books from which to issue bank checks or bank wire to the borrower or to the borrower's seller?
   *CLAIMANT'S ANSWER:* _____

5. **AFFIANT'S QUESTION:** At the time of the loan to the alleged borrower, was there one dollar of Federal Reserve Bank Notes in the bank's possession for every dollar owed in Savings Accounts, Certificates of Deposits and check Accounts (Demand Deposit Accounts) for every dollar of the loan?
   *CLAIMANT'S ANSWER:* _____

6. **AFFIANT'S QUESTION:** According to the bank's policy, is a promise to pay money the equivalent of money?
   *CLAIMANT'S ANSWER:* _____

7. **AFFIANT'S QUESTION:** Does the bank have a policy to prevent the borrower from discharging the mortgage note in "like kind funds" which the bank deposited from which to issue the check?
   *CLAIMANT'S ANSWER:* _____

8. **AFFIANT'S QUESTION:** Does the bank have a policy of violating the Deceptive Trade Practices Act?

   *CLAIMANT'S ANSWER:*

9. **AFFIANT'S QUESTION:** When the bank loan officer talks to the borrower, does the bank inform the borrower that the bank uses the borrowers mortgage note to create the very money the bank loans out to the borrower?

   *CLAIMANT'S ANSWER:*

10. **AFFIANT'S QUESTION:** Does the bank have a policy to show the same money in two separate places at the same time?

    *CLAIMANT'S ANSWER:*

11. **AFFIANT'S QUESTION:** Does the bank claim to loan out money or credit from savings and certificates of deposits while never reducing the amount of money or credit from savings accounts or certificates of deposits, which customers can withdraw from?

    *CLAIMANT'S ANSWER:*

12. **AFFIANT'S QUESTION:** Using the banking practice in place at the time the loan was made, is it theoretically possible for the bank to have loaned out a percentage of the Savings Accounts and Certificates of Deposits?

    *CLAIMANT'S ANSWER:*

13. **AFFIANT'S QUESTION:** If the answer is "no" to question #12, explain why the answer is no.

    *CLAIMANT'S ANSWER:*

14. **AFFIANT'S QUESTION:** In regards to question #12, at the time the loan was made, were there enough Federal Reserve Bank Notes on hand at the bank to match the figures represented by every Savings Account and Certificate of Deposit and checking Account (Demand Deposit Account)?

    *CLAIMANT'S ANSWER:*

15. **AFFIANT'S QUESTION:** Does the bank have to obey, the laws concerning, Commercial Paper; Commercial Transactions, Commercial Instruments, and Negotiable Instruments?

    *CLAIMANT'S ANSWER:*

16. **AFFIANT'S QUESTION:** Did the bank lend the borrower the bank's assets, or the bank's liabilities?

    *CLAIMANT'S ANSWER:*

17. **AFFIANT'S QUESTION:** What is the complete name of the banking entity, which employs you, and in what jurisdiction is the bank chartered?

    *CLAIMANT'S ANSWER:* _____

18. **AFFIANT'S QUESTION:** What is the bank's definition of "Loan Credit"?

    *CLAIMANT'S ANSWER:* _____

19. **AFFIANT'S QUESTION:** Did the bank use the borrowers assumed mortgage note to create new bank money, which did not exist before the assumed mortgage note was signed?

    *CLAIMANT'S ANSWER:* _____

20. **AFFIANT'S QUESTION:** Did the bank take money from any Demand Deposit Account (DDA), Savings Account (SA), or a Certificate of Deposit (CD), or any combination of any DDA, SA or CD, and loan this money to the borrower?

    *CLAIMANT'S ANSWER:* _____

21. **AFFIANT'S QUESTION:** Did the bank replace the money or credit, which it loaned to the borrower with the borrower's assumed mortgage note?

    *CLAIMANT'S ANSWER:* _____

22. **AFFIANT'S QUESTION:** Did the bank take a bank asset called money, or the credit used as collateral for customers' bank deposits, to loan this money to the borrower, and/or did the bank use the borrower's note to replace the asset it loaned to the borrower?

    *CLAIMANT'S ANSWER:* _____

23. **AFFIANT'S QUESTION:** Did the money or credit, which the bank claims to have loaned to the borrower, come from deposits of money or credit made by the bank's customers, excluding the borrower's assumed mortgage note?

    *CLAIMANT'S ANSWER:* _____

24. **AFFIANT'S QUESTION:** Considering the balance sheet entries of the bank's loan of money or credit to the borrower, did the bank directly decrease the customer deposit accounts (i.e. DDA, SA, and CD) for the amount of the loan?

    *CLAIMANT'S ANSWER:* _____

25. **AFFIANT'S QUESTION:** Describe the bookkeeping entries referred to in question #12.

    *CLAIMANT'S ANSWER:* _____

26. **AFFIANT'S QUESTION:** Did the bank's bookkeeping entries to record the loan and the borrower's assumed mortgage note ever, at any time, directly decrease the amount of

money or credit from any specific bank customer's deposit account?

*CLAIMANT'S ANSWER:*

27. **AFFIANT'S QUESTION:** Does the bank have a policy or practice to work in cooperation with other banks or financial institutions use borrower's mortgage note as collateral to create an offsetting amount of new bank money or credit or check book money or DDA generally to equal the amount of the alleged loan?

*CLAIMANT'S ANSWER:*

28. **AFFIANT'S QUESTION:** Regarding the borrowers assumed mortgage loan, give the name of the account which was debited to record the mortgage.

*CLAIMANT'S ANSWER:*

29. **AFFIANT'S QUESTION:** Regarding the bookkeeping entry referred to in Affiant's request and Demands contained herein, state the name and purpose of the account, which was credited.

*CLAIMANT'S ANSWER:*

30. **AFFIANT'S QUESTION:** When the borrower's assumed mortgage note was debited as a bookkeeping entry, was the offsetting entry a credit account?

*CLAIMANT'S ANSWER:*

31. **AFFIANT'S QUESTION:** Regarding the initial bookkeeping entry to record the borrower's assumed mortgage note and the assumed loan to the borrower, was the bookkeeping entry credited for the money loaned to the borrower, and was this credit offset by a debit to record the borrower's assumed mortgage note?

*CLAIMANT'S ANSWER:*

32. **AFFIANT'S QUESTION:** Does the bank currently or has it ever at anytime used the borrower's assumed mortgage note as money to cover the bank's liabilities referred to above, i.e. DDA, SA and CD?

*CLAIMANT'S ANSWER:*

33. **AFFIANT'S QUESTION:** When the assumed loan was made to the borrower, did the bank have every DDA, SA, and CD backed up by Federal Reserve Bank Notes on hand at the bank?

*CLAIMANT'S ANSWER:*

34. **AFFIANT'S QUESTION:** Does the bank have an established policy and practice to emit bills of credit which it creates upon its books at the time of making a loan agreement

and issuing money or so-called money of credit, to its borrowers?

***CLAIMANT'S ANSWER:*** _____

***Name and Title and contact information of Claimant or Claimant's representative answering the above questions:*** _____

23

**STATEMENTS FOR CLAIMANT TO
AGREE WITH OR TO DISPUTE WITHIN 30 DAYS**
CLAIMANT AGREES / DISPUTES by circling **TRUE** or **FALSE**

1. **TRUE | FALSE -** "money" is an asset and an asset is "money" or at least the equivalent
   of "money", and that Federal Reserve Notes are assets, and "checkbook money" or
   "demand deposits" are liabilities of a financial institution and therefore the opposite of
   money.

2. **TRUE | FALSE -** When a bank or a financial institution accepts cash, checks, negotiable
   instruments, promissory notes, etc… from a customer and deposits and records the
   instruments as an asset, there is an offsetting liability that matches the asset they accepted
   from the customer. The liability shows they, the bank or financial institution, owe the
   customer the money they accepted from the customer. From the Federal Reserve Banks
   own publications, it is concluded that two loans were exchanged according to the
   bookkeeping entries. 12 United States Code, Sec. 1831n (a) requires all Federally-insured
   (FDIC) banks to follow GAAP.

3. **TRUE | FALSE -** "Neither as included in its powers nor incidental to them is it a part of
   a bank's business to lend its credit." Credit is the opposite of money and is a liability.
   "Indeed, lending credit is the exact opposite of lending money, which is the real business
   of a bank; for while the latter creates a liability in favor of the bank, the former gives rise
   to a liability of the bank to another." *1 Morse, Banks & Banking (5th ed.) Sec. 65; Magee,
   Banks & Banking (3rd ed.) sec. 248; 1 Michie, Banks & Banking Sec. 99. American
   Express Company vs. Citizens State Bank, 181 Wis. 172; 194 N.W. 427.*

4. **TRUE | FALSE -** "Promissory note" means an instrument that evidences a promise to
   pay a monetary obligation, does not evidence an order to pay, and does not contain an
   acknowledgment by a bank that the bank has <u>received for deposit</u> a sum of money or
   funds. *FLORIDA STATUTES, CHAPTER 679, UNIFORM COMMERCIAL CODE:
   SECURED TRANSACTIONS, ARTICLE 9. 679.1021 Definitions and index of definitions.*

5. **TRUE | FALSE -** Banks cannot lend depositors' money to borrowers without the
   depositors' written authorization. In reality, banks do not lend their depositors' money.
   *12 USC Sec. 1828.*

6. **TRUE | FALSE -** "No bank ever lends its deposits" *Money and Banking by Professor
   David R, Kamerschen, 9th Edition, page 164.*

*24*

7. **TRUE | FALSE** - "Transaction deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries **crediting deposits of borrowers**, which the borrowers in turn could "spend" by writing checks, thereby **"printing" their own money**. *Modern Money Mechanics – Federal Reserve Bank of Chicago, page 3, "Who Creates Money".*

8. **TRUE | FALSE** - Banks do not make loans but they make exchanges when they allegedly make loans. "In exchange for the note or security, the lending or investing institution credits the depositor's account or gives a check that can be deposited at yet another depository institution." *Two Faces of Debt, published by the Federal Reserve Bank of Chicago, p19.*

9. **TRUE | FALSE** - a *check* is "A commercial device intended for use as a temporary expedient for actual Money". *Kennedy v. Jones 140 Ga. 302: 78 S.E. 1069, 1070.*

10. **TRUE | FALSE** - Affiant has not been able to discover, despite extensive research, that banks lend their assets. However, Affiant has discovered through research that Banks deposit the Borrower's promissory note as an asset then writes a bank check against said deposited asset and gives it to the Borrower as a loan without disclosure to the Borrower that the Borrower is depositing the promissory note and the Bank returns the same as a loan and charging the alleged borrower interest to boot. *Money and Banking by David H. Friedman, American Bankers Association,* page 86.

11. **TRUE | FALSE** - The bank used the promissory note to fund the account the check was drawn from and did not put up lawful consideration. Therefore, the contract is .Ultra Vires".

12. **TRUE | FALSE** - All money in use today is "an obligation to pay", for example, Federal Reserve Notes, and Negotiable instruments including Checks, CDs, Drafts, and Notes (promissory notes). *18 USC Sec. 8.*

13. **TRUE | FALSE** - A borrower's PROMISSORY NOTE or "obligation to pay" is the cash value that funds the lender's loan check to or on behalf of the borrower, without disclosure to the borrower. *Money and Banking by David H. Friedman, American Bankers Association, page 86.*

14. **TRUE | FALSE** - As a matter of *equity*, both the borrower and the lender have equal protection under the Law with regard to a mortgage loan agreement as the one referenced herein.

15. **TRUE | FALSE** - As a matter of *equity*, "the one who provides the money or cash value to fund the loan check, in a loan transaction, is the one who must be repaid the loan money.

16. **TRUE | FALSE** - The financial institution that issues a loan check, or equivalent monetary instrument, must follow generally accepted accounting principles (GAAP) and Federal Reserve Bank rules, regulations, policies and procedures. *12 United States Code, Sec. 1831n (a) requires all Federally-insured (FDIC) banks to follow GAAP.*

17. **TRUE | FALSE** - No financial institution can demand payment in any particular kind of currency, and that a borrower has the right to repay a loan in the same species of currency used as a deposit to fund a loan check from a financial institution/alleged lender. *House Joint Resolution 192 of June 5th, 1933 A.D.*

18. **TRUE | FALSE** - The corporate charter of a financial institution does not permit such institution to create money or lend its credit.

19. **TRUE | FALSE** - Affiant makes claim against Claimant that Claimant failed to disclose to Affiant the true nature of the purported debt and the fact that Affiant provided (Affiant's future labor) the cash value created by Affiant's signature in the form of a " promissory note

20. ", to fund any alleged loan check from said financial institution to or on behalf of Affiant. Said non-disclosure voided Affiant's signature on any mortgage loan agreement, *ab initio*.

21. **TRUE | FALSE** - *the word "Loan"* means "advance of money with an absolute promise to repay". *Bankers Mortgage Company v. Commissioner of Internal Revenue, 142 F. 2d 130,131.*

22. **TRUE | FALSE** - Affiant makes claim against Claimant that Claimant did not lend Affiant its money or its equivalent or other depositors' money/funds as Affiant was induced to believe by the above named financial institution and provided Affiant no consideration by failure to perform on the value of the contract or agreement between Affiant and Claimant.

23. **TRUE | FALSE** - Affiant makes claim against Claimant that Claimant violated the Truth in Lending Act by failing to disclose that Affiant provided the cash value to fund the financial institution's alleged loan check and/or wire to Affiant and/or to Affiant's seller.

24. **TRUE | FALSE** - Affiant makes claim against Claimant that Claimant breached any original purported mortgage loan agreement/contract through misrepresentation, lack of

disclosure, and lack of consideration by failure to perform on the value of the purported mortgage loan agreement/contract.

25. **TRUE | FALSE** - Affiant makes claim against Claimant that Claimant does not possess Affiant's original, unmarked, unaltered Promissory Note.

26. **TRUE | FALSE** - Affiant makes claims against Claimant that for Claimant to collect on a Promissory Note, **CLAIMANT MUST POSSESS THE ORIGINAL, UNMARKED, UNALTERED PROMISSORY NOTE.** *Matter of Staff Mortg. & Inv. Corp. 550 F. 2d 1228.*

27. **TRUE | FALSE** - Affiant states that the *copy* of a thing cannot be the thing, no matter how cleverly it is worded or stated.

28. **TRUE | FALSE** - *Money* "In usual and ordinary acceptation it means gold, silver, or paper money used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate. *Lane v. Railey, 133 S.W. 2d, 74, 79, 81.*

29. **TRUE | FALSE** - "No State shall make any other thing than Gold or Silver coin a tender in payment of debt", thus, establishing the true nature of lawful money.

30. **TRUE | FALSE** - Affiant demands a T-accounting (or whatever the complete full accounting records may be called by Claimant) of all funds going in and out of the above numbered account starting with the original promissory note.

31. **TRUE | FALSE** - Any response from an attorney in his public capacity will be a public Offer that will be accepted for value with a demand on said attorney for release of said value to Affiant.

32. **TRUE | FALSE** - Any response from an attorney in his private capacity will be a trespass in a private matter and will be dealt with accordingly by the law.

33. **CLAIMANT'S NOTES:**

**AFFIANT'S DEMAND FOR CLAIMANT TO RESPOND (OR TO REBUT) POINT BY POINT AND TO COMPLY WITH ALL DEMANDS IN THIS DOCUMENT**

1. **SHOULD CLAIMANT REFUSE TO SIGN THE ENCLOSED AFFIDAVIT, ANSWER AFFIANT'S QUESTIONS, REBUT AFFIANT'S STATEMENTS, AND PROCEEDS TO:**

    1. Turn the subject account allegedly owed by Affiant to a debt collector for collections or foreclosure or any other debt collection actions, Claimant agrees to compensate Affiant three times the amount of the original purported debt plus all interest paid to date as well as for damages and all expenses and fees for collection.

    2. Contact Affiant by phone, or by letter, other than for the purpose of informing Affiant that the purported debt is fully discharged or that a private meeting to resolve this private matter is in order. Claimant knows or should know that sending unsubstantiated demands for payment thorough the United States mail system may be considered as mail fraud under federal and state laws.

    3. Claimant may wish to seek legal advice before contacting Affiant again.
       *"Deceitful statements of half-truths or the concealment of material facts is actual fraud under the mail fraud statutes." United States v. Beecroft, 608 F. 2d 753,757. (9th Cir. 1979)*

2. **CLAIMANT'S FAILURE OR REFUSAL TO RESPOND OR REBUT AS STIPULATED HEREIN WILL BE CLAIMANT'S FURTHER AGREEMENT THAT CLAIMANT WILL CEASE AND DESIST FROM ANY ATTEMPT AT COLLECTING THIS ALLEGED DEBT AND CLAIMANT'S TACIT AGREEMENT AND STIPULATION THAT CLAIMANT WILL NOT TURN OVER THIS DEBT TO A DEBT COLLECTOR FOR COLLECTIONS OR FOR FORECLOSURE ACTION.** Furthermore, Claimant's failure to timely dispute Affiant's claims by signing and returning the enclosed Affidavit and rebutting Affiant's statements WITHIN **30 DAYS** will place Claimant in Fault (default), and such Fault (default) will be Claimant's *agreement* to the claims made above by Affiant, and Claimant's absolute and unequivocal waiver of any and all claims against Affiant and to a full discharge of the purported debt referenced by Claimant and allegedly owed by Affiant. If Claimant should fail to rebut Affiant's lawful statements and/or sign and return the enclosed Affidavit to Affiant, and Claimant makes any unverified adverse reporting to any Credit

Bureau with regards to Affiant's Credit rating, Affiant will seek damages for three times the amount of the purported debt amount against Claimant in addition to reporting Claimant to the State Banking Commissioner, the FDIC, and the Federal Trade Commission for illegal trade practices. Again, Affiant demands a T-accounting of all funds going in and out of the above numbered account starting with the original promissory note. Affiant looks forward to hearing from Claimant in a timely manner and within the deadline given with the return of the signed enclosed Affidavit and rebuttal and Affiant thanks Claimant for Claimant's kind cooperation in promptly resolving this private matter.

3. **CLAIMANT'S FAILURE TO RESPOND, AS STIPULATED, IS A VIOLATION OF LAW AND CLAIMANT'S FULL AGREEMENT WITH AND ADMISSION TO THE FACT THAT EVERYTHING WITHIN AND RELATED TO THIS DOCUMENT IS TRUE, CORRECT, LEGAL, AND LAWFUL.** If Claimant fails to respond within the allotted time frame, it constitutes Claimant's full admission attesting to this document and is fully binding upon Claimant in any court in America, without Claimant's protest, objection, or that of those who represent Claimant. If Claimant's fails to respond within the allotted time frame, it constitutes Claimant's full agreement to within 10 days

   1. Claimant will mark the subject erroneous purported debt "Satisfied" and "Paid in Full" on the county Records Books;
   2. refund each and every monthly payment (principal and interest) which we may have inadvertently made toward said fraudulent purported debt;
   3. Return original Promissory Note and blue ink signature affixed upon all the original documents that may exist pertaining to the subject erroneous purported debt.

I hereby affirm that to the best of my knowledge, and spiritual conviction the above information is true and correct.

Dated this 30th Day of March, 2010

Signed reserving all my rights.

Affiant, by: _____

**James Coppedge, UCC1-308**
**ALL RIGHTS RESERVED**
**Authorized Representative**
**Secured Party Creditor**
**Pro Per**

### NOTARY

On this day came before me the Affiant a living flesh and blood human to Oath and Attest and Affirm the signature is true, complete, and correct on the foregoing AFFIDAVIT OF NICE OFFER. James Coppedge the undersigned, who is personally known by me or upon proper oath and identification, personally came before me, the subscriber, a Notary Public in and for the County of Kent and the State of Delaware, and Duly Affirmed the truth of the foregoing Affidavit in my presence. The Affiant also acknowledged the signing thereof to be his own voluntary act and deed. Signing the within instrument in my presence and for the purpose therein stated.

Signed this day ____ 30th ____, of ___ MARCH ___, 2010

at __ DOVER, DELAWARE __

My commission expires on: ___ 09.06.11 ___

By ___ BENJAMIN T. GARRETT ___

Seal: _____

31

## PROOF OF SERVICE:

I, James Coppedge, certify that, I have served all parties a true and correct copy of this document

on this 29th Day of March by sending it Certified Mail to all parties listed above involved.

Affiant, by: _____

**James Coppedge, UCC1-308**
**ALL RIGHTS RESERVED**
**Authorized Representative**
**Secured Party Creditor**
**Pro Per**

30

# Exhibit B

**An unofficial, unsigned, and not a notarized document**

[REOcomplete Real Estate Inc
140 E Richardson Ave
Langhorne PA 19047

05/05/2010

## IMPORTANT NOTICE REGARDING YOUR
## OCCUPANCY OF THE PROPERTY

## (THIS IS NOT A NOTICE TO VACATE)

Dear Occupant(s):

Please be advised that [Chase Home Finance LLC/EMC Mortgage Corporation] [("Chase")/ ("EMC")], in its capacity as mortgage loan servicer and on behalf of the owner, completed a foreclosure proceeding on the property located at _3737 N 18th St Philadelphia PA__ (the "Property") and has retained me as the real estate agent with respect to the Property.

If you are an occupant of the Property, the following options may be available to you:

### Option # 1 - Relocation Assistance

If you desire to vacate the Property, the new owner of the Property may be willing to provide financial relocation assistance to help cover your relocation expenses associated with your moving from the Property. To be eligible, you must vacate the Property within a specified period of time and you must leave the Property in broom-clean condition. Certain restrictions apply. Please contact me to find out more information.

### Option #2 – Rent the Property

This Option #2 does not apply to former owners of the Property or a child, spouse or parent of a former owner of the Property.

If you are a tenant of the Property and you have an "Eligible Lease", as defined below, you may choose to continue renting the Property if you can provide a copy of your Eligible Lease, or other documentation in writing indicating the terms of your Eligible Lease, to me. To be an Eligible Lease, (a) the rent must not be substantially less than fair market rent for the Property, unless the rent is reduced or subsidized due to a federal, state or local subsidy program, (b) you must not be the mortgagor, or the child, spouse, or parent of the mortgagor of the Property, and (c) the lease must have been the result of an arms-length transaction. [Chase/EMC] will honor the current term of an Eligible Lease for the

present time; however, the Property may be listed for marketing and sale. If the Property is sold to a third party who intends to occupy the property as a primary residence, you may receive a 90 day notice to vacate the Property from the third party purchaser. Your rent will be due and payable according to the terms of your Eligible Lease.

If you are the occupant of the Property but you do not have an Eligible Lease, you may be eligible to rent the Property under the terms of a new written month-to-month lease. Certain restrictions apply including, without limitation, the following:

- The Property must be in good condition and free of any conditions affecting health or safety.
- This Property may be listed for sale while you are renting it.
- As a renter, you will need to allow access to the property for repairs, maintenance, inspections, and showings to prospective purchasers.
- The previous owner(s) of the Property, or a child, spouse or parent of the previous owner(s) is/are not eligible for a lease.

**This document is not intended to cover all of the options you may have. If you have any questions regarding your legal options, you should consult with an attorney.**

**If you are interested in an option listed above, please contact me, within 10 days for more information.**

**This letter is nonbinding. It does not create any rights or obligations between the parties. It is merely a statement of various options that may be available to you. Nothing contained in this document is intended as, or shall constitute, a waiver of any rights or remedies by [Chase/EMC] or the owner of the Property.**

Sincerely,


Richard Beaumont
REOcomplete Real Estate
215-702-1216 x 102



## CHASE MANHATTAN MORTGAGE CORPORATION

Rich Beaumont
Licensed Broker PA & NJ
Member NRBA, FEChans Platinum Certification,
REO Default Certified Professional,
REOnetwork Premium Partner

## REOcomplete Real Estate

Servicing the Nation's Leading Lenders



Langhorne, PA
Phone 215 702 1216 ext. 101
Fax 215 702 1305
Rich@REOComplete.com

## AGREEMENT TO VACATE

This notice will confirm that Chase Manhattan Mortgage Corporation (the "Owner") is the owner of the property located at:

It is the understanding of the Owner that you are currently occupying this Property. The Owner has obtained the Property as a consequence of a foreclosure sale.

This is to inform you that the Owner has retained the following representative/broker (business card attached above) to work with you regarding your occupancy of the Property.

You may have already received, or you will shortly receive, a Notice to Vacate or Quit from the Owner's attorney, confirming that the Owner is seeking to recover possession of the Property. The Owner may also seek to recover from you the fair market value of the Property for the period of time commencing on the date of the foreclosure sale and ending on the date on which you vacate the Property.

While the Owner has the right to pursue these legal actions against you, the Agreement to Vacate Program provides that, in the event you vacate the Property on or before
                                    (the "Delivery Date"), the Owner: (a) will not file, or
will voluntarily dismiss, any legal actions against you for possession of the Property or for fair rental value payments, and (b) will make payment to you, on the date on which you vacate the Property, of:

Dollars ($          )  (the "Cash Incentive")

The Owner's representative/broker has no authority to increase the amount of the Cash Incentive or to extend the Delivery Date.

If you vacate the Property by the Delivery Date, the Owner's representative/broker will make a final inspection of the Property. If you have returned all keys and have left the Property (including all fixtures, facilities, and appliances) in broom clean condition, and in no worse condition as they are now, ordinary wear and tear exempt, then upon signing a simple release form, the Owner's representative/broker shall pay you by check the Cash Incentive. The Owner will be entitled to deduct from the Cash Incentive: (a) the cost of any repairs for damage caused by you between this date and the date you vacate the Property, and (b) the cost of replacing any fixtures or property removed from the Property.

## AGREEMENT TO VACATE PAGE 2

4.  If you choose to participate in the Relocation Program, then until the Delivery Date, to the maximum extent permitted by law, you agree that: (a) the Owner will not be liable for any injury or damage to person or property on the Property (the same being at your sole risk), and (b) you agree to release, indemnify and hold the Owner and its agents harmless from, and against, any and all claims arising out of the condition of the Property and/or your use and occupancy thereof.

5.  You also agree to cooperate with the Owner in allowing reasonable access to the Property upon at least 24 hours notice for the purpose of inspection, appraising, marketing, and showing of the Property to prospective purchasers.

6.  IN NO EVENT SHALL THIS NOTICE CONSTITUTE AN ACCEPTANCE OF YOUR CONTINUED OCCUPATION OF THE PROPERTY, AND NOTHING HEREIN SHALL BE DEEMED TO CREATE ANY TENANCY. THIS PROGRAM DOES NOT PRECLUDE THE OWNER FROM INITIATING ANY EVICTION PROCEEDINGS PERMITTED BY LAW DURING THE TIME LEADING UP TO THE DELIVERY DATE.

7.  In the event you wish to take advantage of this Agreement to Vacate Program, please return a copy of this notice to the Owner's representative/broker, signed by you and all other adult occupants of the Property on or before (                    ); otherwise, you will no longer be eligible to participate in this program.

OCCUPANT'S PRINTED NAME:                OCCUPANT'S PRINTED NAME:

_____        _____

_____        _____
Occupant's Signature        Date        Occupant's Signature        Date

Social Security #: _____       Social Security #: _____

OCCUPANT'S PRINTED NAME:                OCCUPANT'S PRINTED NAME:

_____        _____

_____        _____
Occupant's Signature        Date        Occupant's Signature        Date

Social Security #: _____       Social Security #: _____
                                         CHASE MANHATTAN MORTGAGE CORPORATION

_____
Chase Manhattan Mortgage Corporation Representative/Broker Signature

_____
Phone Number
        Date        _____



## CHASE MANHATTAN MORTGAGE CORPORATION
## RELEASE

The undersigned hereby acknowledges receipt of ($            ) from Chase Manhattan
Mortgage Corporation.

Prior to acceptance and in consideration of said payment and other good and valuable consideration, the
undersigned hereby acknowledges and agrees that I/we have vacated the property ('the Property") in
**broom clean** condition located at:

Which I/we were occupying, and hereby release any and all rights of possession or occupancy in and to
the Property, and further release Chase Manhattan Mortgage Corporation, its officers, directors,
employees, attorneys, agents and/or successors and assigns from any and all claims, demands, causes of
action, suits, and damages and liabilities, in connection with the Property and/or our use and occupancy
thereof.

Signed this _____ day of _____

OCCUPANT'S PRINTED NAME:                      OCCUPANT'S PRINTED NAME:

_____              _____


_____              _____
Occupant's Signature       Date               Occupant's Signature       Date

Social Security #: _____            Social Security #: _____

OCCUPANT'S PRINTED NAME:                      OCCUPANT'S PRINTED NAME:

_____              _____


_____              _____
Occupant's Signature       Date               Occupant's Signature       Date

Social Security #: _____            Social Security #: _____
                      CHASE MANHATTAN MORTGAGE CORPORATION


_____
Chase Manhattan Mortgage Corporation Representative/Broker Signature as Witness


_____
Phone Number

Date        _____

# EXHIBIT C

**AFFIDAVIT OF NOTICE OF DISHONOR AND DEFAULT JUDGEMENT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **JAMES COPPEDGE** | ) |
| **Plaintiff** | ) |
| vs. | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

**JAMES COPPEDGE**               )               **Pro Per**
      **Plaintiff**               )
vs.               )
          )               May Term 2009
          )               Number 02170
          )

JP MORGAN CHASE BANK, N.A.               )
[**CHASE HOME FINANCE LLC/EMC**          )               **DEFAULT JUDGEMENT**
MORTGAGE CORPORATION]          )               **PURSUANT TO: RULE 12(b)(c)**
[("CHASE")]/("EMC")],               )               **37, 37(c), 37(c)(3), Title 42**
10790 RANCHO BERNARDO ROAD          )               **Section 1983, Title 18 Part 1, Chapter 42**
MAIL STATION WII-4033               )               **Section 894, Chapter 31, Section 655 & 656**
SAN DIEGO, CALIFORNIA 92127          )               **Title 42, Section 1983, Rule 60(b)(c), and**
          )               **R.I.C.O. Statue Section 1962(c)(d)**

MCCABE, WEISBERG AND CONWAY          )
BY: **TERRENCE J. MCCABE, ESQ**          )
    **MARC WEISBER, ESQ.**               )
    **EDWARD D. CONWAY, ESQ.**          )
    **MARGARET GAIRO, ESQ.**          )
123 SOUTH BROAD STREET               )
SUITE 2080               )
PHILADELPHIA, PENNSYLVANIA          )
         19109               )
          )
          )
    DEFENDANT               )

## AFFIDAVIT OF NOTICE OF DISHONOR
## AND DEFAULT JUDGEMENT

**ON AND FOR THE RECORD AND LET THE RECORD SHOW, that e**ach one of

the above listed named defendants is being sued for $500,000.00 for interference into my

"private" Commercial Affairs regarding deficient legal standing in the illegal mortgage

foreclosure procedures pertaining to my property at 3737 N. 18th Street, Philadelphia, PA 19140.

I have initially and CONDITIONALLY ACCEPTED FOR VALUE the presentment of the

mortgage company Upon Proof of Claim that the presented Negotiable Instruments to the

Mortgage Company did not privately settle the debt, Upon Proof of Claim that the NICE OFFER

AND DEMAND did not settle the debt. The mortgage company did DEFAULT as stipulated.

Therefore, A DISHONOR and DEFAULT JUDGEMENT is being sought against you for having waiving the right to answer by acquiescence, tacit admission, and failure to contest, rejecting your due process opportunity to cure as clearly stated in the AFFIDAVIT OF NICE OFFER AND DEMAND. You FAILED to rebut the Affidavit as stipulated in a timely manner **(See Exhibit A & D).** The document was mailed to each of you: Terence McCabe, Esq., on March 30, 2010, and received by you on March 31, 2010, and mailed to JP Morgan Chase Bank, N.A., on March 30, 2010, and received by the CFO (only) on April 2, 2010. These documents were sent by Certified Mail with Receipt Request Returned: 7009 2820 0003 6824 0049 JP Morgan Chase and 7009 2820 0003 6824 0056 Terrence McCabe, Esq. I received no response, and ALL Negotiable Instruments were ignored UCC3-603.

This account has been SETTLED IN FULL by Negotiable Instruments forwarded to the following: IRS, by Express mail on January 21, 2010, EM 488314617 US, JP MORGORAN, Express Mail on: January 21, 2010, EM 488314926 US, and TERRENCE J. MCCABE, ESQ, Express Mail on: January 21, 2010, EM 488314912 US; and now verified by the DEFAULT of the Respondents as stipulated in the Affidavit of NICE OFFER and DEMAND more than 30 days ago.

**IN THE ABSENCE OF SUCH RESPONSE** the Affiant, James Coppedge, Authorized Representative of JAMES COPPEDGE, hereby inserts and records this Notice of DEFAULT in this Federal Lawsuit upon and against the above named respondent(s) pursuant to the codes outlined above.

**WHEREAS**, such actions now shall be taken in accordance to the procedures set forth in the COMMERICAL AFFIDAVIT of default. The Respondents have defaulted and is now in involuntary bankruptcy with notice of FORFITURE of all property needed for satisfying $500,000.00 for interfering in my "private" Commercial Affairs. The court is Petitioned to

enforce the lien as stipulated, to void the Sheriff's sale due to fraud pursuant to Title 42, Section

1983, Rule 60(b)(c), and to release the property to the undersigned immediately.

I, James Coppedge, have personal knowledge of the above facts, am competent to testify

to the above facts, and declare that the foregoing is true and complete under my Unlimited

Commercial Liability.

Dated this __/2__ th Day of May, 2010

Signed reserving all my rights,

Affiant, by: _____

**James Coppedge, UCC1-308**
**ALL RIGHTS RESERVED**
**Authorized Representative**
**Secured Party Creditor**
**Pro Per**

### NOTARY

On this day May ___/2___, 2010 came before me the Affiant a living flesh and blood human to
Oath and Attest and Affirm the signature is true, complete, and correct on the foregoing
AFFIDAVIT OF NOTICE OF DISHONOR AND DEFAULT JUDGMENT. James Coppedge
the undersigned, who is personally known by me or upon proper oath and identification,
personally came before me, the subscriber, a Notary Public in and for the County of Kent and the
State of Delaware, and Duly Affirmed the truth of the foregoing Affidavit in my presence. The
Affiant also acknowledged the signing thereof to be his own voluntary act and deed. Signing the
within instrument in my presence and for the purpose therein stated.

Signed this day _____/2_____, of _____May_____, _2010_

at _Kent County, Delaware_

My commission expires on: _Feb. 7, 2011_

By _William J. MPhyl_

Seal: _____

ar # 2006 4314415

# **EXHIBIT D**

**PROOF OF U.S. POSTAL SERVICE FOR:**

**NEGATIVE AVERMENT & NICE OFFER**

✳

3737 – NEG. AVER., RASPY & OFFICIAL NOTICE TO CANCEL DOC.

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  □ Agent  □ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| 1. Article Addressed to:<br><br>MCCABE, WEISBERG & CONWAY, P.C.<br>MARGARET GAIRO, ESQ,<br>TERRENCE J. MCCABE, ESQUIRE,<br>MARC S. WEISBERG, ESQUIRE<br>& EDWARD D. CONWAY, ESQUIRE<br>123 S. BROAD STREET<br>SUITE 2080<br>PHILADELPHIA, PA  19108 | D. Is delivery address different from item 1?  □ Yes<br>If YES, enter delivery address below:  □ ?<br><br><br>3. Service Type<br>□ Certified Mail  □ Express Mail<br>□ Registered  □ Return Receipt for Merchandise<br>□ Insured Mail  □ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  □ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7008 1830 0003 1598 8391 |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540

✳ 3737 – NEG. AVER., RASPY & OFFICIAL NOTICE TO CANCEL

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  □ Agent  □ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| 1. Article Addressed to:<br><br>CHASE HOME FINANCE, LLC<br>2901 KINWEST PARKWAY<br>IRVING, TX  75063-3134 | D. Is delivery address different from item 1?  □ Yes<br>If YES, enter delivery address below:  □ No<br><br><br>3. Service Type<br>□ Certified Mail  □ Express Mail<br>□ Registered  □ Return Receipt for Merchandise<br>□ Insured Mail  □ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  □ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7008 1830 0003 1598 8384 |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

PHILADELPHIA PA 19109

| | |
|---|---|
| Postage | $2.58 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $7.68 |

03/30/2010

Sent To MCCABE, WEISBERG & CONWAY, ESQ.
ATTENTION: TERRENCE MCCABE,
ET AL
Street, Apt No.; or PO Box No. 123 S. Broad St., Ste., 2080
City, State, ZIP+4 Phila., PA 19109

PS Form 3800, August 2006   See Reverse for Instructions

7009 2820 0003 6824 0056

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

SAN DIEGO CA 92127

| | |
|---|---|
| Postage | $1.73 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $6.83 |

03/30/2010

Sent To JP MORGAN CHASE BANK, N.A.
ATTENTION: CFO
Street, Apt No.; 10790 RANCHO BERNARDO ROAD
or PO Box No. MAIL STATION WI1-4033
City, State, ZIP+4 SAN DIEGO, CA 92127

PS Form 3800, August 2006   See Reverse for Instructions

7009 2820 0003 6824 0049

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MCCABE, WEISBERG & CONWAY
ATTN: TERRENCE MCCABE, ESQ.,
ET AL
123 S. BROAD STREET
SUITE 2080
PHILA, PA 19109

COMPLETE THIS SECTION ON DELIVERY
A. Signature
B. Received by (Printed Name)   Date of Delivery
D. Is delivery address different from item 1?  ☐ Yes  ☐ No
If YES, enter delivery address below:
3737 / NICE OFFER.

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label) 7009 2820 0003 6824 0056

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JP MORGAN CHASE BANK, N.A.
10790 RANCHO BERNARDO ROAD
MAIL STATION WI1-4033
SAN DIEGO, CA 92127
ATTN: CFO (ONLY)

COMPLETE THIS SECTION ON DELIVERY
A. Signature
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1?  ☐ Yes  ☐ No
If YES, enter delivery address below:
3737 / NICE OFFER

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label) 7009 2820 0003 6824 0049

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**UNITED STATES POSTAL SERVICE**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JAMES COPPEDGE

Dover DE - 9904

### Certified Mail Provides:

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

**Important Reminders:**

- Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
- Certified Mail is not available for any class of International mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a Return Receipt may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement "Restricted Delivery".
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, August 2006 (Reverse) PSN 7530-02-000-9047

---

**UNITED STATES POSTAL SERVICE** CA 926

22 APR 10 PM 10

• Sender: Please print your name, address, and ZIP+4 in this box •

JAMES COPPEDGE

DOVER, DELAWARE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

### Certified Mail Provides:

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

**Important Reminders:**

- Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
- Certified Mail is not available for any class of International mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a Return Receipt may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement "Restricted Delivery".
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, August 2006 (Reverse) PSN 7530-02-000-9047

# CERTIFICATE OF SERVICE

I, James Coppedge, pro per, do hereby certify and affirm that the below DEFENDANTS

were served on May __12__$^{24}$__, 2010 the following documents:

1). Affidavit of Notice of Dishonor and Default Judgment

2). Removal Notice to Federal Court for:

Petition for Relief of Emergency Stay of Execution,

Writ of Prohibition and Complaint

In the mortgage foreclosure and sale of my property on the following individuals:

**RICHARD BEAUMONT**
REOCOMPLETE REAL ESTATE, INC.
140 E. RICHARDARDSON AVE.
LANGHORN, PA  19047

JP MORGAN CHASE BANK, N.A.
[**CHASE HOME FINANCE LLC/EMC**
MORTGAGE CORPORATION]
[("CHASE")]/("EMC")],
10790 RANCHO BERNARDO ROAD
MAIL STATION WII-4033
SAN DIEGO, CALIFORNIA 92127

MCCABE, WEISBERG AND CONWAY
BY: **TERRENCE J. MCCABE, ESQ**
    **MARC WEISBER, ESQ.**
    **EDWARD D. CONWAY, ESQ.**
    **MARGARET GAIRO, ESQ.**
123 SOUTH BROAD STREET
SUITE 2080
PHILADELPHIA, PENNSYLVANIA 19109

By _____
                James Coppedge, A.R.
                        Pro Per